**KENOSHA AUTO TRANSPORT CORPORATION, a corporation, and U.S.A.C. Transport, Inc., Plaintiffs and Counter-Defendants-Appellees,**

v.

**LOWE SEED COMPANY, a corporation, and Guy V. Covington, Defendants and Counter-Plaintiffs-Appellants.**

No. 15450.

United States Court of Appeals
Seventh Circuit.

July 1, 1966.

Thomas C. Stifler, Danville, Ill., Butz, Blanke & Stith, Kankakee, Ill., Stifler & Snyder, Danville, Ill., for appellants.

James P. Chapman, Chicago, Ill., Henry S. Wise, Danville, Ill., Joseph V. Dowd, Chicago, Ill., for appellees.

Before HASTINGS, Chief Judge, and DUFFY and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiffs, Kenosha Auto Transport Corporation, operator, and U.S.A.C. Transport, Inc., owner and lessor, of a freight carrying convoy, brought this action against defendants, Lowe Seed Company, owner of the truck, and Guy C. Covington, operator, for damages alleged to have been sustained by reason of defendants' negligence in the operation of its truck. Defendants filed a counterclaim against plaintiffs, seeking damages alleged to have been sustained by reason of plaintiffs' negligence.

The case was tried to a jury which rendered a verdict in favor of plaintiffs, with damages in accordance with a stipulation of the parties. From the judgment entered thereon, defendants appeal.

The grounds urged for reversal are that the Court erred (1) in its failure to grant defendants' motion to direct a verdict or, in the alternative, for a new trial, (2) in its refusal to give certain instructions tendered by defendants and (3) in its refusal to admit evidence offered by defendants.

It has often been held in cases such as this that the issues of a defendant's negligence, plaintiff's due care and proximate cause are for the jury to decide. See opinion of this Court in Reitan v. Travelers Indemnity Co., 267 F.2d 66, 68, and cases therein cited. If the only error asserted was the Court's refusal to direct a verdict, the case could be disposed of in short order. However, the Court's refusal to give certain of defendants' instructions and to admit certain evidence offered by them cannot be disposed of so readily.

On April 30, 1961, plaintiffs commenced to take a caravan of vehicles from Rossford Ordnance Base at Rossford, Ohio, loaded among other things with large pieces of radar equipment destined for Baker, Oregon. The caravan was in charge of Myron R. Brown, safety supervisor for U.S.A.C.

Prior to the trip, U.S.A.C. obtained a permit by telegraph notice from the Illinois Division of Highways, Springfield,

Illinois, to take the caravan through Illinois with an extra wide load up to 17', following a specific route which included Route 66. The permit provided (1) that the speed of the tractor semi-trailer which was to be used to transport the three pieces of equipment was limited to 25 miles per hour, (2) that the limit of the width of the load was 17', and (3) that the permit was null and void if any provision of Sec. 3–501 of the Policy on Permits, Revised 1961, was violated.

The caravan consisted of six vehicles. There were two cars, one at the head and the other at the rear of the caravan; the other four vehicles were semi-trailer trucks (a tractor which pulls a trailer). Each truck had a driver and a flagman who sat next to the driver. The corners and center of each trailer and the front and side corner of each tractor had clearance lights; each unit had flashing amber lights to the front and flashing red lights to the rear.

The first vehicle in the caravan was a 1954 Cadillac coupe, painted bright red with a white top, driven by Brown. This car had two red lights in front which were constantly blinking and on top carried a large sign which stated in black letters (against a yellow background), "Wide Load Behind."

The next or second vehicle was a semi-trailer truck driven by William A. Hobson. (This was the vehicle involved in the occurrence.) The tractor portion of this unit was about 8' wide and 9' tall. The trailer was 35' long, 8' wide and 52" high. Among other things, this trailer was loaded with a radar base or hub, which was the widest piece of equipment carried in the caravan. "Points" or "wings" extended horizontally from the bottom of the base, which was 16'10", wide at its widest point, including the wings. The base was centered on the trailer so that approximately 42 to 45" extended on one side of the trailer and a similar distance on the other. Red flags, 16" x 16", were placed on the extreme end of each of the points or wings. In addition, there were flashing marker lights and tail lights on the trailer, and a flash-ing amber light on that portion of the base which protruded on the left or traffic side of the trailer. All lights were flashing at the time of the occurrence.

The third vehicle in the caravan (the second truck) was a semi-tractor trailer driven by Wilfred H. LeDuc. This trailer was about 8' wide and carried a crated roller 14' in width, which extended 3' from each side of the trailer. There were flags on the outer edges of the bearing and a series of warning lights on the vehicle. The two vehicles which followed were also semi-trailers carrying loads which did not extend out from the trailers. The final vehicle was a station wagon with a large sign on top which stated, "Wide-Slow-Load Ahead."

Plaintiffs' caravan, possessed with the permit as above shown, was examined by the Illinois weight master at the Illinois-Indiana line on Route 30, on May 3, 1961, and he approved the continuation of the caravan into Illinois. When it reached Joliet, Illinois, it headed south on U.S. 66.

Defendants' vehicle (owned by Lowe) was a Ford truck with a grain box, the widest point of which was 7'10". On May 3, 1961, Covington drove the truck from a point near Kankakee, entering Route 66 at Chenoa, Illinois, about 40 miles north of the scene of the occurrence, and headed south. Highway 66 at the point of the occurrence (and for several miles in each direction) is straight and level, with four lanes, two lanes for southbound vehicles separated from two lanes for those northbound by a grassy divider or median strip. Each lane is 12' in width, with a 2' shoulder between the edge of the lefthand, southbound lane and the grassy portion of the median strip. The weather was bright and sunny, the pavement dry and visibility good. Covington said that as he drove south on Route 66, he could see "as far as the normal eye could see," between one and two miles.

Covington first saw plaintiffs' caravan about a mile north of Bloomington, followed it for about a mile and attempted to pass. When the radiator of his vehicle

was even with the back of the cab of Hobson's truck, the box on Covington's truck struck one of the wings of the radar base.

There is some dispute as to the facts surrounding the occurrence. Plaintiffs' testimony showed that Hobson was driving his vehicle as close to the righthand side of the road as possible, that Covington had adequate space to pass on the left and that Covington caused the collision by permitting his truck to veer to his right into the side of Hobson's truck. Defendants' testimony showed that Covington was driving as nearly as he could to the left side of the southbound lanes, and as the right front corner of the body of his truck came to the front part of the radar antenna hub which was a part of the over-width load, the corner of his truck and a protrusion on the base of the radar antenna hub came together. There was also testimony to the effect that Hobson was responsible for the collision by veering to his left as Covington was passing in his proper lane.

■ We think it hardly open to question but that the evidence presented a submissible case on the issues of negligence, due care and proximate cause, and that the judgment based upon the jury verdict must stand unless there were procedural errors which require a new trial. In this connection it is pertinent to note that defendants made no objection in the trial court to the instructions as given and raise no such issue here. The Court adequately informed the jury on the issues of negligence, due care and proximate cause, and the meaning of each of those terms. The jury was given the conventional instructions as to the burden of proof and the issues to be considered in reaching a verdict.

The refused instructions of which defendants complain relate primarily to a so-called "Policy on Permits" of the Division of Highways of the State of Illinois which, according to the proposed instructions, "provided that no permit moves shall at any time infringe upon the opposite-bound lane of a two-lane pavement, nor overhang an adjoining lane of a multiple lane pavement, regardless of lane width," and "that the proposed movement shall be made in such a manner that the highway will remain open at all times so as not to obstruct the flow of traffic."

■ ■ Defendants argue, "The Trial Court should have taken judicial notice of the contents of the Policy on Permits." The short answer to this contention is that the Court was not requested to take judicial notice and, absent a request, was not obligated to do so. See Ginsberg v. Thomas, 10 Cir., 170 F.2d 1, 3; Woods v. Village of LaGrange Park, 287 Ill.App. 201, 209, 4 N.E.2d 764. Assuming, however, that the Court abused its discretion in not taking judicial notice of the provisions of the Policy on Permits, we are of the view that the proposed instructions were properly refused because the alleged violations were not shown to have been the proximate cause of the occurrence. For instance, defendants argue that plaintiffs' caravan was traveling at a speed in excess of that designated in the permit. There was no proof, however, that the speed of either vehicle had anything to do with the collision. Likewise, plaintiffs' argument that the permit provided for only one overwidth truck while there were two in the caravan is of no consequence for the reason that the collision was between the first truck of the caravan and defendants' truck. While the great weight of the proof is to the effect that plaintiffs' caravan at the time of the occurrence was traveling in its own lane, there was testimony that the radar base extended into the adjoining lane by as much as one foot. It is the testimony bearing on this point which in the main furnishes the basis for the contention that plaintiffs were negligent in the operation of their truck. This issue was squarely presented to the jury and decided in favor of plaintiffs. Under these circumstances, it is not discernible how defendants' theory would have been aided by the proposed instruction.

■ We think the conclusion inescapable that the sole proximate cause of the collision was the failure of Covington to use ordinary care in his effort to pass the caravan. Weather conditions and visi-

bility were good, the pavement was dry, Covington was an experienced truck driver and familiar with the highway. All parts of the caravan carried adequate warning signs, including flashing lights; on the left side of the trailer was a flashing amber light and the extreme ends of the wings carried red flags 16″ square. Even on defendants' theory that there was a protrusion extending 12″ into the left lane, which is contrary to the weight of the evidence and inconsistent with the jury verdict, Covington in the exercise of ordinary care had room to pass with safety. Under such circumstances, it would be just as logical to reason that the presence of plaintiffs' caravan on the highway was the proximate cause of the collision.

Of the cases called to our attention relative to the issue of proximate cause the most pertinent perhaps is Audubon Transportation Co. v. Yonkers R. Co., 126 Misc. 180, 212 N.Y.S. 684. In that case, plaintiff's bus was damaged in a collision with a street car operated by defendant. In defense, the latter contended that plaintiff had not obtained the proper statutory permit to operate its bus on the street in question. The Court held such defense was immaterial absent a showing that the statutory violation was a proximate cause of the occurrence in question; that irrespective of compliance with the statute, both plaintiff and defendant had a duty to use ordinary care to avoid a collision with one another. See also De Bord v. Proctor & Gamble Distributing Co., 5 Cir., 146 F.2d 54, 57; Hoover v. Allen, D.C., 241 F.Supp. 213, 258, and Moyer v. Walden W. Shaw Livery Co., 205 Ill.App. 273, 274.

Defendants also complain of the Court's rejection of their proposed instruction, "The driver of any motor vehicle of the second division or motor vehicle drawing another vehicle when traveling upon a roadway outside of a business or residence district shall not follow within 300 feet of another motor vehicle of the second division or motor vehicle drawing another vehicle." This proposed instruction was taken verbatim from Sec. 61(b) of the Uniform Traffic Act (Ill.Rev.Stat.1959, Ch. 95½, Sec. 158). This paragraph, first included in the section in 1937, was amended in 1953 by addition of paragraph (c), which states, "Motor vehicles being driven upon any roadway outside of a business or residence district in a caravan or motorcade whether or not towing other vehicles shall be so operated as to allow sufficient space between each such vehicle or combination of vehicles so as to enable any other vehicle to enter and occupy such space without danger. This provision shall not apply to funeral processions."

The question is whether the "300 feet" requirement of paragraph (b) or the "sufficient space" requirement of paragraph (c) is applicable. The District Court instructed in accordance with the latter paragraph, and we think properly so. Defendants evidently were at one time of that view as in their amended answer they pleaded as an affirmative defense a violation of Sec. 61(c) and made no reference to Sec. 61(b).

As we have noted, defendants make no objection to the charge given to the jury, and we conclude that the Court properly refused the additional instructions which they offered. In any event, the refusal of such proposals does not constitute prejudicial error.

Defendants complain of the Court's refusal to permit defendant Covington to testify as to certain statements made at the scene of the occurrence and shortly afterward by plaintiffs' employees, Hobson and Brown. Hobson (not a witness) allegedly stated "that the radar base was 17′8″ in width," and Brown allegedly stated, "Why did you jump on your brakes?"

The record indicates that defendants' *res gestae* argument is an afterthought. The testimony was offered on the premise that Brown and Hobson were agents, presumably of plaintiffs, not as a part of the *res gestae*. In any event, the trial court has broad discretion in determining if a statement should be admitted under the *res gestae* principle. See Kalschinski v. Illinois Bankers Life

Assurance Co., 311 Ill.App. 181, 187, 35 N.E.2d 705 and Ryan v. Ryan, 321 Ill. App. 467, 468, 53 N.E.2d 283. We think there was no abuse of the Court's discretion in this respect.

We conclude and so hold that the judgment appealed from should be affirmed. It is so ordered.