720 So.2d 492 (1998)
Larry MITCHELL, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-00971 COA.
Court of Appeals of Mississippi.
July 21, 1998.
*493 Allan Shackelford, Clarksdale, for Appellant.
Michael C. Moore, Attorney General, Jean Smith Vaughan, Sp. Asst. Attorney General, Jackson, for Appellee.
Before BRIDGES, C.J., and HERRING, and SOUTHWICK, JJ.
BRIDGES, C.J., for the Court:
Larry Mitchell was indicted, tried, and convicted in the Circuit Court of Coahoma County for burglary, aggravated assault, and possession of a firearm by a convicted felon. He was sentenced to serve a term of twelve years for the burglary charge, to run consecutively to any previous sentence; twelve years for the aggravated assault conviction, to run consecutively with count one; and three years for possession of a firearm, to run consecutively with counts one and two, all in the custody of the Mississippi Department of Corrections. He presents the following issues on appeal:

I. THE COURT ERRED IN NOT DIRECTING A VERDICT FOR DEFENDANT IN COUNT I.

II. THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

III. THE COURT ERRED IN ALLOWING THE DISTRICT ATTORNEY TO MAKE IRRELEVANT AND INFLAMMATORY ARGUMENT.
After reviewing the entire record and the relevant authority, we hold that Mitchell's conviction for burglary was error and reverse and render on that count alone. Mitchell's other two issues are without merit and we affirm the convictions on aggravated assault and possession of a firearm by a convicted felon.

FACTS
Mitchell and Manie Stokes lived together in a house at 454 Florida in Clarksdale, Mississippi. Their relationship was a stormy one. Occasionally, Mitchell would leave for a few days to let things cool off between the two, but he never moved out of their residence. On the night in question, Mitchell had left the week before after a row and had been sleeping at his mother's.
On March 26, 1996, Mitchell called Manie and told her he was coming home. When Mitchell arrived at home, Manie was entertaining Willie Keeler. When Mitchell arrived at his house, the front gate was locked, so he jumped the fence. He approached the front door and knocked several times, but no one would answer. The door was wedged shut with a knife, so Mitchell pushed it open and went in. Once in the house, a gunfight ensued between Mitchell and Keeler. Keeler shot Mitchell three times, but Keeler escaped out the back door without injury.
*494 At trial, Mitchell presented evidence that he lived at 454 Florida and that it was his and Manie's residence. Manie agreed and testified that Mitchell still lived there and his employer paid the utility bills. Keeler did not live there and testified that he knew he better not be there when Mitchell got home. Mitchell moved for a directed verdict at the close of the State's case and renewed his challenge to the sufficiency of the evidence at the end of trial with a motion for judgment notwithstanding the verdict.
Testimony about who shot first inside the house was conflicting. Manie testified that Keeler told her that he shot first, but Keeler testified that Mitchell made the first shot. Mitchell denied ever shooting the gun of his own accord, but testified instead that Keeler shot at the gun in Mitchell's hand causing it to discharge. As to count three, Mitchell admitted to being convicted previously of cattle theft and possessing a firearm the night in question.

I. THE COURT ERRED IN NOT DIRECTING A VERDICT FOR DEFENDANT IN COUNT I.
Mitchell was indicted under Mississippi Code section 97-17-23, which reads in pertinent part:
Every person who shall be convicted of breaking and entering, in the night, the dwelling house of another, armed with a deadly weapon ... shall be punished by imprisonment in the penitentiary not more than twenty-five years. [emphasis added]
Mitchell moved for a directed verdict on the ground that the State had failed to prove all the elements of the crimes charged. He renewed his motion at the close of the trial, and now on appeal argues that Mitchell cannot be guilty of burglarizing his own home. We agree.
The statute is clear that burglary consists of the breaking and entering the dwelling house of another. Mitchell was not prohibited from entering his own home. There were no restraining orders or other legal writs keeping Mitchell from going to and pushing open the door of his own house. While there is no Mississippi Supreme Court case directly on point for this situation, the supreme court has stated that, "[i]t is not a part of the corpus delicti to show that the appellant did the breaking, but it was the criminal breaking without the consent of the owner ... that constituted the corpus delicti." Holderfield v. State, 215 Miss. 564, 570, 61 So.2d 385, 386 (1952). When one enters with the consent of the owner, but commits a crime thereafter, his entry does not make him guilty of burglary. Id. The Alabama Supreme Court spelled things out with a bit more clarity when it stated that "the offense [of burglary] is not committed by one who breaks and enters his own dwelling house or other building." Wilson v. State, 247 Ala. 84, 22 So.2d 601, 602 (1945).
The State tries desperately on appeal to convince us that Mitchell moved out and had no right to be at the house at 454 Florida. The State also argues that possession is primary, not ownership, and that Willie Keeler and Manie were in possession of the house. In fact, the State goes so far in its brief as to claim that the house at 454 Florida was the habitation of Manie and Keeler, despite testimony from Manie that Keeler had never been in the house before and was only there to visit on his way home from work. Testimony at trial from both Manie and Mitchell revealed that 454 Florida was Mitchell's home and he lived there. The following exchange took place between Manie and Mitchell's counsel at trial:
Q. Larry's home was right there where you live, wasn't it?
A. Yes, sir.
* * * * * *
Q. Where were Larry's clothes?
A. At home where we live.
Q. At that house?
A. Yes, sir.
Q. And he had a key to that house, didn't he?
A. Yes, sir.
The evidence clearly shows that 454 Florida was the residence of Manie and Mitchell, not Keeler. Mitchell had all of his belongings at the house, his employer paid the utility bills, and Manie readily admitted that Mitchell lived there. Even Keeler admitted *495 that he knew he was in trouble and was not supposed to be there when Mitchell came home. The State directs us to Davis v. State, 611 So.2d 906, 911 (Miss.1992), in support of its proposition that Keeler somehow was in possession of the property at the time Mitchell entered. In Davis, the Mississippi Supreme Court stated that it is not necessarily the owner of the property against whom a burglary is committed, but the occupant of the dwelling or building. Id. As shown by the evidence, Manie and Mitchell were the lawful occupants of the house at 454 Florida, and the State has failed to prove that Keeler's one to two hour first time visit in the house in any way entitled him to the status of occupant.
"This Court must review the evidence and the ruling on its sufficiency as of the time the last challenge was made in the trial court. The evidence is viewed in the light most favorable to the State, which also receives the benefit of any favorable inferences which may be reasonably drawn from the evidence. All credible evidence consistent with the guilty verdict is accepted as true, with issues of weight and credibility resolved by the jury. This Court will reverse only where `reasonable and fair-minded jurors could only find the accused not guilty,'" Johnson v. State, 642 So.2d 924, 927 (Miss.1994). We review Mitchell's challenge at his motion for judgment notwithstanding the verdict. The State failed to prove that Mitchell was breaking and entering the house of another, and the evidence established that he was entering his own home. One cannot break and enter his own home, nor can one's own home be the dwelling house of another. Therefore, the trial court erred in not granting Mitchell's challenge to the sufficiency of the evidence on the burglary charge, and we reverse his conviction for that crime.

II. THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
[T]he challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion... New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State.
....
The jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed.
McClain v. State, 625 So.2d 774, 780 (Miss. 1993). Having resolved the question of the burglary issue, we turn to the aggravated assault charge. Mitchell admitted that he had a gun when he entered his house that night. The conflicting testimony dealt with who fired the first shot. Mitchell said Keeler did, and Keeler said Mitchell did. At that point, it became a question for the jury, and it was the jury's responsibility to determine whose testimony to believe.
Regarding the count for possession of a firearm by a felon, the records clearly indicate that Mitchell was convicted of stealing cattle. Mitchell admitted to carrying a firearm, and he cannot complain of any error in his conviction of possession of a firearm by a convicted felon. When faced with Mitchell's motion for new trial, the court below did not abuse its discretion in overruling it.

III. THE COURT ERRED IN ALLOWING THE DISTRICT ATTORNEY TO MAKE IRRELEVANT AND INFLAMMATORY ARGUMENT.
During his closing argument, the prosecutor for the State argued that Manie Stokes was involved in an abusive relationship with Mitchell. Mitchell objected that there was no such evidence in the record of any abusive relationship. The State replied that Mitchell's breaking into Manie's house was evidence of an abusive relationship. The trial court overruled Mitchell's objection.
It is elementary that an attorney cannot argue in his closing about evidence not introduced at trial. "Prosecutors are afforded the right to argue anything in the State's closing argument that was presented as evidence. However, arguing statements of fact that are not in evidence or necessarily *496 inferable from it and that are prejudicial to the defendant is error. Thus, prosecuting attorneys should refrain from doing or saying anything that would tend to cause the jury to disfavor the defendant due to matters other than evidence relative to the crime." Banks v. State, No. 95-KA-00215-SCT, 1997 WL 751940, at *6 (Miss. Dec. 8, 1997).
We do not believe that there was sufficient basis in the record for the prosecutor to argue that Manie was in an abusive relationship. However, Mitchell has failed to prove any prejudice resulting from the comment, and we cannot say that the error was reversible. However, we admonish prosecutors and defense attorneys alike to not take advantage of the heretofore broad latitude granted attorneys in closing arguments.
¶ 18. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF COUNT I, BURGLARY, IS REVERSED AND RENDERED. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND ORDER TO MAKE FULL RESTITUTION TO VICTIM, AND COUNT III, POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE TO THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL TAXED EQUALLY TO COAHOMA COUNTY AND TO APPELLANT.
McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, and SOUTHWICK, JJ., concur.