LEE, J., for the court.
PROCEDURAL HISTORY AND FACTS
¶ 1. Hartie Mapp lived next door to the victim in this case. On March 9, 2001, Hartie went to his neighbor’s house to use the phone, but the two ended up in her bedroom where they had sex. Hartie’s recount of events leading to the intercourse differs from the victim’s account. Hartie claims that his neighbor consented in exchange for money, and her claim of rape is revenge for Hartie’s failure to pay her after the act. In contrast, the victim claims that Hartie locked her inside the bedroom and forced her at knife point to have sex with him; she denies having been promised money in exchange for the sex.
¶ 2. After the alleged rape, the victim went to the hospital for an examination. The police arrested Hartie the next day and read him his Miranda rights.[1] Hartie gave the officer different versions of what happened, as later discussed.
¶ 3. Hartie was convicted of rape by a Leake County jury and was sentenced to serve twenty-five years in jail. His motion for new trial was overruled, and he now appeals to this Court raising the following issues: (1) Did the trial court err in permitting Deputy Turner to testify concerning the victim’s telling him of the alleged rape; (2) did the trial court err in admitting his oral confession into evidence; and (3) was the verdict against the overwhelming weight of the evidence? We review each of these issues and find no merit; thus, we affirm.
DISCUSSION OF THE ISSUES
I. DID THE TRIAL COURT ERR IN PERMITTING DEPUTY TURNER TO TESTIFY CONCERNING THE VICTIM’S TELLING TO HIM OF THE ALLEGED RAPE?
¶ 4. Hartie Mapp first argues that the judge erred in allowing Deputy Cornelius Turner to testify concerning Turner’s visit with the victim at the hospital. Deputy Turner testified that he went to the hospital where he saw the victim sitting on a bed. A nurse was consoling her because she apparently had been crying. Deputy Turner asked the victim what had happened, and she told him Hartie Mapp had raped her. Hartie objected at trial, but the judge overruled the objection, reasoning that the victim was making a report to an investigating officer, and this evidence was an exception to the hearsay rule. Hartie argues that the judge erred in overruling this objection because it was inadmissible hearsay under Mississippi Rule of Evidence 802 which states, “Hearsay is not admissible except as provided by law.” The State argues that the victim’s comments to the officer were admissible under the hearsay exception for excited utterances, which is provided for in M.R.E. 803(2). Rule 803(2) provides that a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is admissible. Here, the victim testified that, immediately after the incident, she drove herself to the hospital. Shortly thereafter the officer arrived, and while she was being consoled by the nurse, she told the officer what had happened.
Spontaneity is “the essential ingredient” to the underlying theory supporting admission of an excited utterance.... However, “under the excited utterance exception the fact that questions are asked, while relevant to spontaneity, does not ipso facto demonstrate a lack of spontaneity in every case.” Where the *744 excited utterance is prompted by a simple question, even from an officer, such as “What happened?” or “What’s wrong?” we have still found the statement to fall under the exception.
Carter v. State, 722 So.2d 1258(¶ 10) (Miss.1998) (citations omitted). The victim was clearly still under the stress of the situation, and according to Carter, the victim’s statement to Deputy Turner does qualify as an excited utterance.
¶ 5. The decision to admit or refuse admission under M.R.E. 803 is within the discretion of the trial court. Davis v. State, 611 So.2d 906, 914 (Miss.1992). We find the trial court did not abuse its discretion in allowing Deputy Turner’s testimony concerning the victim’s statements to him at the hospital. This issue has no merit.
II. DID THE TRIAL COURT ERR IN ADMITTING HARTIE’S ORAL CONFESSION INTO EVIDENCE?
¶ 6. Hartie next argues that his oral confession should not have been admitted because it described an incident of consensual sexual intercourse, and he was not afforded a hearing concerning admissibility of this oral statement. Hartie claims that he only adopted his written statement, not the oral version to which Officer Mark Wilcher also testified.
¶ 7. The afternoon Hartie was arrested, he told Officer Wilcher he wanted to talk with him. Officer Wilcher advised Hartie a second time of his Miranda rights, and Hartie told the officer his version of the events. With this version, Hartie admitted going to his neighbor’s home to use the telephone, but he did not rempmber what happened because he was under the influence of cocaine and whiskey at that time. What he did recall was going with his neighbor to her bedroom to engage in consensual intercourse. She changed her mind once they were in the bedroom, but Hartie forced himself on her. After Har-tie’s confession, Officer Wilcher proceeded to put the confession in writing for Hartie to sign. As he wrote, Officer Wilcher orally confirmed the words he was writing with Hartie; however, when Officer Wil-cher asked Hartie about forcing himself on the victim, Hartie changed his story from the previous version. Hartie explained that he had offered his neighbor money in exchange for sex and that he stopped when she asked him to stop.
¶ 8. “A trial judge’s admission of a confession will only be overturned where an incorrect legal standard was applied, manifest error was committed, or the decision was contrary to the overwhelming weight of the evidence.” Kircher v. State, 753 So.2d 1017(¶ 27) (Miss.1999). Hartie’s second statement, which he signed, did not act to cancel out the prior oral statement, and the fact that the first statement was not reduced to writing has no effect on its status as a voluntary confession. Both Officer Wilcher and a nurse were present when Hartie made both statements. At the suppression hearing, both witnesses testified that Officer Wilcher read Hartie his Miranda rights, and Officer Wilcher testified that he did not promise Hartie any leniency nor did he threaten him. Having reviewed the testimony brought forth at the hearing, we cannot find the trial judge erred in allowing both the oral and written confessions into evidence. This issue is without merit.
III. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
 ¶ 9. Hartie finally argues that the verdict was against the weight of the evidence.
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict *745 and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.
Cross v. State, 759 So.2d 354(¶ 9) (Miss.1999) (citations omitted). The evidence in the present case was abundant, and viewing the evidence which is favorable to the verdict, we cannot find an abuse of discretion. The victim says she was threatened with a knife and was forced into the intercourse; Hartie says intercourse was consensual. Both admit they had sex, but whether or not the victim consented is a question the jury was left to decide. The jury’s verdict reflected the victim’s version of events; thus, we cannot find an unconscionable injustice results. This issue has no merit.
¶10. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF RAPE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, IRVING, MYERS AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., AND CHANDLER, J., CONCUR IN RESULT ONLY.

. See Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).