**5/20/97**

IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 94-KA-00537 COA

MCKINLEY OWENS

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. L. BRELAND HILBURN, JR.

COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

GERALD FRY

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: DEWITT ALLRED IIIDISTRICT ATTORNEY: TOMMY MAYFIELD

NATURE OF THE CASE: CRIMINAL: SALE OF COCAINE

TRIAL COURT DISPOSITION: DEFENDANT SENTENCED AS A HABITUAL OFFENDER TO SERVE A TERM OF 30 YEARS IN THE MDOC

MOTION FOR REHEARING FILED:6/2/97

CERTIORARI FILED: 7/29/97

BEFORE BRIDGES, C.J., HERRING, AND PAYNE, JJ.

HERRING, J., FOR THE COURT:

The appellant, McKinley Owens, was convicted on a charge of the sale of cocaine in the Circuit Court of the First Judicial District of Hinds County, Mississippi. On April 15, 1994, the trial court entered judgment against Owens and sentenced him to imprisonment for thirty years as a habitual offender in the custody of the Mississippi Department of Corrections. Owens appeals from his conviction to this court, raising the following issues as error:

I. DID THE CIRCUIT COURT COMMIT REVERSIBLE ERROR WHEN IT ALLOWED INTO EVIDENCE HEARSAY ORAL STATEMENTS OF CO-DEFENDANT, ROBERT DENT, MADE TO THE JACKSON POLICE DEPARTMENT, FOLLOWING HIS ARREST?

II. DID THE TRIAL COURT ERR IN FAILING TO GRANT APPELLANT'S MOTIONS TO (1) DISMISS THE INDICTMENT; (2) EXCLUDE EVIDENCE AND TESTIMONY; AND (3) DIRECT VERDICT IN HIS FAVOR AT THE CLOSE OF THE STATE'S CASE IN CHIEF BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SHOW APPELLANT SOLD COCAINE TO ROBERT DENT BECAUSE IT (A) WAS INADMISSIBLE BECAUSE IT WAS TESTIMONY GIVEN BY A CO-CONSPIRATOR AFTER THE CONSPIRACY HAD ENDED; (B) WAS NOT A PROPER "EXCITED UTTERANCE" EXCEPTION TO THE GENERAL HEARSAY RULE; AND (C) NO PROPER PREDICATE WAS LAID TO SHOW THE LIMITED PURPOSES FOR WHICH IT WAS OFFERED.

III. DID THE FACT THAT OWENS' CONVICTION FAILED TO CONTAIN SOME EVIDENCE SUPPORTING EACH ELEMENT OF THE CRIME VIOLATE DUE PROCESS OF LAW?

IV. DID THE TRIAL COURT ABUSE ITS DISCRETION, ERRING AS A MATTER OF LAW, BY ADMITTING DENT'S STATEMENT INTO EVIDENCE THROUGH THE TESTIMONY OF ODOM, ILES, AND BAGGETT, BECAUSE STATEMENTS MADE AFTER THE OBJECTIVE OF THE CONSPIRACY HAD ENDED ARE INADMISSIBLE?

V. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ADMITTING THESE STATEMENTS BECAUSE THE TESTIMONY FROM WHICH THESE STATEMENTS CAME WAS HEARSAY AND NOT ADMISSIBLE?

VI. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN ALLOWING DENT'S STATEMENTS INTO EVIDENCE SINCE HE WAS DEPRIVED OF HIS CONFRONTATIONAL RIGHTS?

VII. SINCE THE EVIDENCE, IF ANY AND OTHERWISE ADMISSIBLE, TENDING TO SHOW A SALE FROM APPELLANT TO DENT WAS CIRCUMSTANTIAL, DID THE STATE PROVE ITS CASE TO THE EXCLUSION OF ANY REASONABLE HYPOTHESIS?

VIII. WAS THE JURY VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

IX. DID THE FAILURE OF TRIAL COUNSEL TO CALL ROBERT DENT AS A WITNESS CONSTITUTE INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE IT DEPRIVED OWENS OF HIS CONSTITUTIONAL RIGHT TO CONFRONTATION OF WITNESSES?

We find that none of Owens' issues on appeal have merit and therefore affirm.

FACTS

On May 21, 1993, Police Detectives Larry Iles, Alvaleen Baggett, and Larry Preston, along with other officers from the Jackson Police Department, effected a plan to make a controlled purchase of cocaine from McKinley Owens at the Hawkins Field in the City of Jackson. To implement the controlled purchase from Owens, the officers secured the services of Albert Odom, who agreed to assist the police in order to "work off" a drug charge pending against him. Odom advised the officers that in order to purchase cocaine from McKinley Owens, he would have to make the purchase through an intermediary, Robert Dent, whom he had dealt with previously. Thereafter, Odom contacted Dent who informed him that he could procure the cocaine.

On the day of the purchase, and prior to his meeting with Dent, Odom was searched and wired for sound by the police officers so that they could overhear the conversation between Odom and Dent. He was then given approximately $500 with which to make the purchase, along with the $25 which he had in his pocket at the time of the search. Under police surveillance, Odom met Dent at a designated place, and they traveled in the same vehicle to Hawkins Field, where they waited for the arrival of Dent's source of supply, purported to be the appellant, Owens. Odom's understanding from Dent was that the sale and transfer of the cocaine would take place at the airfield. Dent was not aware of the presence of the police officers or that Odom was wired for sound.

According to Odom and the police officers, Owens, with whom they were familiar, arrived at approximately 7:00 p.m. in a "silver Mercedes" automobile. At this time, Odom transferred the money to Dent, who then got out of their vehicle with the money in hand and went over to and entered the Appellant's vehicle, where he sat down with Owens. According to the police witnesses, they saw Owens and Dent passing objects back and forth, at which time they decided to close-in and arrest Owens and Dent.

Owens, upon seeing the vehicles of the police officers closing-in on him, proceeded to drive his vehicle from the scene at a high rate of speed, with Dent as a passenger. A chase ensued and at some point Dent jumped from the moving vehicle being driven by Owens and fell to the pavement with a bag of what was later determined to be crack cocaine in his hand. In the course of jumping from the vehicle, Dent suffered several scrapes and bruises. Owens continued his flight, but the officers stopped to pick up Dent and the cocaine thereby allowing Owens to get away. Officers Iles, Baggett, and Carter, as well as Al Odom, positively identified Owens as the driver of the silver Mercedes.

Dent was taken into custody along with the cocaine. A search of his person revealed that he did not have in his possession the money given to him by Al Odom. Approximately one hour after he was taken into custody, Dent gave a statement to the police officers identifying McKinley Owens as the driver of the Mercedes automobile. Dent further stated that while he was in the vehicle with Owens during the chase, the Appellant stuck a gun to his head and threatened to blow his head off if he did not jump from the vehicle. He stated that he got the cocaine he was carrying from the Appellant. This oral statement by Dent to the police officers was presented to the jury through the testimony of Detective Larry Iles, over the objection of the Appellant, as an "excited utterance" by Dent.

McKinley Owens eventually surrendered to the police, accompanied by his attorney, on May 25, 1993. It should be noted that the police officers eventually made contact with Owens on May 21, 1993, using a cellular telephone number that Dent furnished the officers. During their conversation with Owens, the officers requested that he turn himself in to the authorities.

At the trial of this action, the State called several police officers as witnesses, as well as Al Odom. Detective Iles identified Owens as the driver of the Mercedes and recounted the statement given by Dent to Iles and Detective Alvareen Baggett, in which Dent identified Owens as the person from whom he purchased the cocaine on May 21, 1993. Prior to offering Dent's oral statement into evidence, the following dialogue between the prosecutor, Detective Iles, the defense counsel, and the trial court took place:

Q. Okay. Now Detective Iles, I want to let's go back now to the afternoon of May 21st of last year. At the time you got Robert Dent downtown and determined that he was not seriously injured. Okay?

A. Yes, sir.

Q. Now at that time describe for the Court Robert Dent's emotional state as it appeared to you as a consequence of what had just happened.

Mr. Barnett: Your Honor, we object to that. This is irrelevant material.

The Court: If you will, rephrase your question.

Q. Describe his appearance with respect to excitability or emotion at the time you were down at the station, and after you had determined that he was not seriously injured, and less than one hour after he bailed out of the car.

A. He was upset.

Q. Okay. Now--and was this less than an hour after he bailed out of the car?

A. Approximately an hour.

Q. Okay. Where were y'all?

A. We were in the Vice and Narcotics Office of the Jackson Police Department.

Q. At that time--

Mr Mayfield: Your Honor, may we approach the bench (Bench Conference out of the hearing of the Jury)

Mr Mayfield: Your Honor, at this time, and counsel may want to voir dire the witness out of the presence of the jury, but what I intend to do is show statements made by Robert Dent at the time while he was still under the excitement of the preceding event. And I intend to offer statements made by him as an exception to the hearsay rule under Rule 803(2). And if counsel wants to voir dire as to whether the guy was still excited, that is the only--I have already shown that it was in a relatively short period of time. Do you want to have voir dire on it, or just--

The Court: If you want to question him, you certainly may.

Mr. Barnett: We would object, of course, to this line of testimony at this time. Certainly, we intend-- if we have to go forward with proof, we intend to bring Robert Dent here as a witness. In that event, they can cross examine Robert Dent as to any statements he may have given to Detectives Iles at the Police Department, and in rebuttal bring Mr. Iles back up here to testify as to what, if any, statements Robert Dent gave them at that time.

Mr. Mayfield: I think I am entitled to show it as part of my case in chief. It is substantive evidence.

Mr. Barnett: They can show it through Robert Dent. He is here and available. They are trying to use some statement that Robert Dent gave. He is in the Hinds County Detention Center. We have him under subpoena, and I think the State does, too. I am not sure.

The Court: You do have Dent under subpoena?

Mr. Mayfield: I don't intend to call him.

The Court: I understand. But I am saying you do.

Mr. Barnett: I do. And I can tell--

The Court: Well, in that event I think the statement would be admissible anyway in rebuttal.

Mr. Mayfield: Sure. It's six of one and half dozen of the other.

The Court: So, it will be overruled.

Mr. Barnett: When you said it is overruled, you are going to allow him to get into it?

The Court: Yes, sir.

Mr. Barnett: Your Honor, you said it would be admissible on rebuttal. Of course, we may never get to that point.

Mr. Mayfield: I don't know what his witness is going to say, so , I can't--

Mr. Barnett: Well, I may not have to put on any witness. In fact, I may not have to put on any. The Court may sustain a motion at the conclusion of the State's testimony. That is all a possibility. And I would suggest to the Court, and my motion is that we object to him testifying to this at this time.

Mr. Mayfield: It is a clear exception under 803(2). I can't imagine a clearer. In fact, I have been waiting years to get one like this.

The Court: Well, I am going to overrule the objection. (Bench Conference Concluded)

The dialogue as shown above took place during the State's case in chief. When the defense counsel was asked by the court if he intended to call Dent as a witness, he replied in the affirmative, and the court, over counsel's objection, allowed Dent's statement into evidence since "the statement would be admissible anyway in rebuttal." However, when the defendant put on his case the following dialogue

took place:

Mr. Barnett: It has just come to my attention from Mark Sledge, who represents Robert Earl Dent, that Robert Earl Dent may change his testimony from what I expected it to be. I have a statement from Robert Earl Dent that I took July 11th, 1993, which I had furnished to the District Attorney's Office a long time back, and, of course, the District Attorney's Office has talked to Robert Earl Dent, too.

Mr. Mayfield: Excuse me. No, we have never talked to him. The only contact with him has been through his attorney, Mr. Sledge. I don't talk to counsel defendant.

Mr. Barnett: Excuse me. Okay. Through the police department.

Mr. Mayfield: Negative.

Mr. Barnett: Larry Iles testified that he talked to him.

Mr. Mayfield: At the time at the scene. But since he has been represented--

Mr. Barnett: That's what I am talking about.

Mr. Mayfield: Oh, okay.

Mr. Barnett: I am saying that he has been talked to by law enforcement authorities, by Larry Iles, who testified yesterday.

Mr. Mayfield: Uh-huh.

Mr. Barnett: In fact, he testified yesterday that Robert Dent told him that McKinley Owens was there on the scene, and Robert Earl Dent has told me, and I have a statement to the effect--

The Court: Well, your client just went out the door. Where did he go?

Mr. Barnett: I don't know. --that Robert Earl Dent told me, and signed a statement to the effect, that McKinley Owens was not there, that the person that was there was a fellow named Wayne Vancleave. And our whole defense has been based on that. Mr. Sledge just informed me that he talked to Robert Earl Dent this morning, and that Robert Earl Dent and Mr. Sledge have been informed that if Robert Earl Dent gets on the witness stand and testifies as per his statement of July 11th of '93, that the District Attorney's Office is going to have him indicted as an habitual.

Mr. Mayfield: Let's back up. I didn't tell him that. Mark, come up here. I didn't tell him any such thing. Did I tell you any such thing as that? I told you he is already charged as an habitual.

Mr. Sledge: That's right.

Mr. Barnett: Well, you said you were going to proceed against him as an habitual.

Mr. Mayfield: Oh, I am going to proceed against him whether he tells the truth or tells a lie here today. Whether he says what he said in that statement or whether he tells the truth. I absolutely intend to proceed against him.

Mr. Barnett: I just-- I need some time now to get to talk to Robert Dent for about ten minutes.

Mr. Mayfield: He is going to get proceeded against whether he tells what is in that statement or whether he tells the truth. Either way.

The Court: All right. I will give you some time to talk to him.

Mr. Barnett: Thank you, Your Honor.

Mr. Barnett: Can we get him brought over here? We anticipate him testifying as a witness. He's in the Hinds County Detention Center.

After the recess, the defense counsel and his client made the following statements:

Mr. Barnett: Comes now the defendant though counsel and would show unto this Court that we had subpoenaed and were expecting to call as a witness for the defense Robert Earl Dent. We have been advised this morning by Mr. Dent's attorney, Honorable Mark Sledge, that in the event Mr. Dent was put on the witness stand and requested to testify that he would take the Fifth Amendment. That being true, we see no need to call Mr. Dent. And I have consulted with my client, McKinley Owens, and he has agreed we will not call Mr. Dent because of that. Is that right, McKinley?

A. Right.

Thus, Robert Dent was never called to testify. Later in the trial, the defendant called Wayne Van Cleave as a witness, who testified that it was he, not Owens, who met with Robert Dent on May 21, 1993, and then left the scene when he saw other vehicles closing in on him. Van Cleave's story was that he was in the heating and cooling business and had installed heating and cooling systems in several rental houses owned by Owens. On this occasion, Van Cleave stated that Owens had asked him to repair the cooling system in his automobile and that while he had the vehicle in his possession, a call came in on the cellular phone in the vehicle from Robert Dent, whom Van Cleave had known in the past. Van Cleave testified that he asked Dent if he could purchase some "smoke" or marijuana, and a meeting for this purpose was set up at Hawkins Field. According to Van Cleave, he met with Dent at the airfield in Owens' vehicle, and hurriedly left the scene with Dent in the vehicle with him. He stated that when he saw the other vehicles closing in, he thought he was being set up for a robbery. He further stated that he had a large sum of cash on him to pay his employees that day. He then pulled a gun on Dent and fled the scene.

The final witness for the defense was the Appellant, McKinley Owens. He denied meeting Dent at the airfield and corroborated Van Cleave's statement that he was in possession of the Appellant's vehicle.

ANALYSIS

A. *The statement of Robert Dent.*

The Appellant presents nine (9) issues for review. Issues I, II, IV, V, VI and IX all deal generally with whether or not the trial court committed reversible error when it permitted Detective Iles to repeat for the jury, the oral statement made by Dent to Iles and Detective Baggett. The Sixth

Amendment of the United States Constitution, as well as the Mississippi Constitution of 1890, Art. III. 26, guarantees the right of the accused in criminal prosecutions to confront and cross examine the witnesses presented against him. As stated in *Williamson v. State*, 512 So. 2d 868, 873 (Miss. 1987):

[T]hese confrontation clauses are in a sense hearsay rules "elevated to constitutional status" designed to prevent the admission of non-confronted out-of-court statements which lack reliability, are not made under oath, and deny the accused the opportunity to cross-examine such a statement so as to test its truthfulness and reliability. (Citations omitted). Confrontation clause problems become even more acute where post-arrest statements made by one of several defendants inculpating one or more of the other defendants is introduced into evidence in proceedings against one of the co-defendants. These accusations are among the *least trustworthy* of statements, presumptively, though rebuttably unreliable, and those most in need of cross examination under circumstances where the trier of fact had the opportunity to observe the declarant's demeanor.

*Id.* at 873 (emphasis added). *See also Mitchell v. State,* 495 So. 2d 5, 8, 11 (Miss. 1986), which issued a similar ruling, following an earlier decision by the United States Supreme Court in *Bruton v. U.S.*, 391 U.S. 123, 136 (1968), and held that a cautionary instruction that such evidence is not to be used substantively, is constitutionally insufficient to secure the defendant's rights under the Confrontation Clause of the Sixth Amendment.It should be noted that no cautionary instruction was offered or given in the case *sub judice.* As stated in *Bruton*, "[t]here are some context in which the risks that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton*, 391 U.S. 123 at 135-36. *See also Lee v. Illinois*, 476 U.S. 530, 540 (1986) (reaffirming *Bruton*).

In the aftermath of the *Bruton* decision, our Mississippi Supreme Court adopted a procedural rule in *Brown v. State*, 340 So. 2d 718, 721 (Miss. 1976), as follows:

[I]n such cases, the prosecution should not offer, and the trial judge should not admit, in evidence, incriminating statements of a co-defendant (implicating the defendant) during the State's case in chief, since it could not be known whether the co-defendant would testify after the state rested. The statement, if admissible should be admitted only after the co-defendant took the stand and was subject to cross-examination by the defendant . . . .

In the case *sub judice,* based upon the comments of the trial judge, it appears that the court assumed that the co-defendant or accomplice, Dent, would ultimately testify. As it later turned out, Dent decided to invoke his privilege against self-incrimination and refused to testify.

The State argues that this issue was not presented to the trial court for decision. We disagree. A careful reading of the transcript of the testimony clearly indicates that defense counsel objected to Dent's statement being allowed into evidence, and that there was a lengthy discussion concerning whether and when the statement of Dent should be allowed to be presented to the jury.

The State argues correctly that the fact that a defendant "enjoyed no direct confrontation" with a witness at trial, does not automatically mean that the defendant's rights under the Confrontation Clause have been violated. *Mitchell v. State*, 572 So. 2d 865, 868-70 (Miss. 1990). There have been cases where there are sufficient "indicia of reliability" where statements may be placed before a jury,

although there is no confrontation of the declarant. *See Dutton v. Evans*, 400 U.S. 74, 89 (1970), as well as Mississippi Rule of Evidence 804 (b)(3). Furthermore, where a statement is received into evidence under a clear and "firmly rooted" exception to the hearsay rule, it has been held that the Confrontation Clause may be circumvented. *Mitchell*, 572 So. 2d at 870. *See also Ohio v. Roberts*, 448 U.S. 56, (1980). The Mississippi Supreme Court recently ruled on this issue in *Williams v. State*, 667 So. 2d 15 (Miss. 1996). In *Williams* the court stated that "[b]oth the United States Supreme Court and this Court have ruled that the Confrontation Clause may restrict the range of admissible hearsay. Such statements may be precluded where they lack indicia of reliability and trustworthiness." *Id.* at 20. The *Williams* court went on to state that reliability can be inferred "where the evidence falls within a firmly rooted hearsay exception." *Id.* at 21 (quoting *Ohio v. Roberts,* 448 U.S. at 56).

In the case *sub judice*, the State argues that the statement of Dent is admissible as an excited utterance exception to the hearsay rule, pursuant to Mississippi Rule of Evidence 803 (2), which states:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . .

(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Mississippi Rule of Evidence 803(2) is identical in language to Federal Rule of Evidence 803(2). According to M. Graham, Federal Practice and Procedure: Evidence 6753:

[T]he requirements for admissibility under this exception are (1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate, i.e., the statement must be made while under the influence of the startling event or condition; and (3) a statement relating to the startling event or condition.

Graham, 6753, at 571.

Whether or not spontaneity has been established is with the trial court's sound discretion. *Davis v. State*, 611 So. 2d 906, 914 (Miss. 1992). In regard to the element of time:

[T]he standard of measurement is the duration of the excitement. The amount of time elapsed is but one factor to be considered . . . . Other factors include the nature of the condition or event, the age and condition of the declarant, the presence or absence of self-interest, and whether the statement was volunteered on in response to a question.

*Id.* at 914.

As stated in *Davis*, the Mississippi Rules of Evidence are derived from the Federal Rules of Evidence (FRE). Federal decisions interpreting the FRE hold that the "admission or exclusion of testimony under Rule 803(2) is discretionary with the trial court." *Kenosha Auto Transport Corp. v. Lowe Seed Co.*, 362 F.2d 765 (7th Cir. 1966). The Mississippi Supreme Court has likewise held that the admissibility of excited utterances is within the sound discretion of the trial court. *Davis,* 611 So. 2d at 914.

In *Idaho v. Wright*, 497 U.S. 805, 806 (1990) the United States Supreme Court, in referring to a statement made by a child, stated, "[T]he statement was not made under circumstances of reliability comparable to those required, for example, for the admission of excited utterances or statements made for purposes of medical diagnosis or treatment." Thus, it would appear that the "excited utterance" exception to the hearsay rule is "firmly rooted" in the eyes of the United States Supreme Court.

After careful consideration, we hold that the trial court did not abuse its discretion in allowing Dent's extrajudicial statement to be offered into evidence and considered by the jury. We further hold that under the rule of *Ohio v. Roberts*, there was no violation of the Appellant's Confrontation Clause rights.

In this case, Dent's statement was made shortly after he leaped from the moving vehicle after his life was threatened with a gun--a bizarre event by any standard. When Dent fell to the pavement, he predictably received scrapes and bruises and was in a dazed condition. His statement was made shortly thereafter at police headquarters while he was under arrest but still in an excited condition, according to police officers. In fact, the officers had to stop him from talking while they administered a *Miranda* warning to him. The fact that Dent was an older person and a known drug trafficker, as well as the fact that he gave his statement while under arrest and in response to interrogation, is disturbing. Nevertheless, our supreme court has permitted the admissibility of excited utterances where, as here, the question asked is simply: "[D]o you want to tell us what happened." *See Sanders v. State*, 586 So. 2d 792, 795 (Miss. 1991). In the case *sub judice*, we cannot say that the trial court committed an abuse of discretion in allowing the statement to be considered. According to the police officers, Dent:

1. Stated that Al Odom picked him up at his house on the day of the incident;

2. Stated that he telephoned McKinley Owens, using the cellular telephone number previously given to him by Owens;

3. Gave the cellular telephone number of Owens to the police officers, which number they later used to call Owens to ask that he give himself up;

4. Stated that he and Owens exchanged the cocaine and the money;

5. Stated that Owens pulled a gun on Dent, threatened his life, and forced him to jump from the car.

In regard to the issue of reliability of Dent's statement, it is probable that the trial court was mindful of the fact that there were four witnesses who observed Owens in the vehicle. *See Harris v. Magee*, 573 So. 2d 646, 651 (Miss. 1990). However, Dent supplied the officers with the correct cellular telephone number for the Appellant's vehicle, a sure sign that he and Owens had dealings with each other on a regular basis.

In concluding this issue, it cannot be said that the trial court abused its discretion in finding that the statement was related to a startling event and made while Dent was still under the stress of the excitement caused by that event. Furthermore, the record discloses sufficient guarantees of trustworthiness to elevate Dent's statement above any Confrontation Clause hurdle.

B. *Should Dent's statement be excluded pursuant to the provisions of the Mississippi Rules of Evidence 801(d)(2)(E)?*

In his second assignment of error, Owens contends that Dent's statement should have been excluded from the evidence under the auspices of Mississippi Rule of Evidence 801(d)(2)(E), which renders admissible a statement by a co-conspirator of the defendant during the course of and in furtherance of the conspiracy. Mississippi Rule of Evidence 801(d)(2)(E) has been interpreted to exclude extrajudicial statements made by co-conspirators, such as Dent, made after the failure of the object of the conspiracy. *Mitchell v. State*, 495 So. 2d 5,11 (Miss. 1986). However, in this case, we have held that the statement was admissible as an excited utterance under Mississippi Rule of Evidence 803(2). Thus, Appellant's argument on this issue has no merit. *Brent v. State*, 632 So. 2d 936, 943, n.4 (Miss. 1994). Moreover, this issue was not raised as a defense at the trial of this action and is procedurally barred. *Sills v. State*, 634 So. 2d 124, 125 (Miss. 1994).

C. *Was the evidence legally insufficient to support a conviction*?

In his third assignment of error, the Appellant contends that the evidence presented by the State failed to evince each element of the crime charged. This contention has no merit. An appeal based on legal insufficiency of the evidence, gives rise to a very limited standard of review. In such cases, we view all of the evidence in the light most favorable to the prosecution and "we give the prosecution the benefit of all favorable inferences." *Clayton v. State*, 652 So. 2d 720, 723 (Miss. 1995). We can only reverse the trial court if "the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty . . . ." *Id.* at 723.

Owens is charged with the unlawful sale of cocaine in violation of Miss. Code Ann. 41-29-139(a)(1), (1972, as amended). In order to prove its case, the State must show that Owens knowingly or intentionally did sell a controlled substance to another party. As shown by the evidence:

1. Four eye witnesses observed Owens arrive at Hawkins Field.

2. The witnesses saw Dent enter Owens' vehicle with approximately $525.

3. The witnesses saw Dent and Owens making an exchange of some kind while together in the same vehicle.

4. Dent's statement, that Owens sold him the crack cocaine for approximately $525, was admitted into evidence.

5. The witnesses saw Owens speed away when police cars approached.

6. The witnesses saw Dent fall from the moving vehicle with what was later proved to be crack cocaine in his hands. The $525 was not found on Dent.

7. Miss. Code Ann. 41-29-115(a)(4), (1972, as amended) lists cocaine and its derivatives as a class II controlled substance.

Viewing these and other facts in a light most favorable to the prosecution, we find that all elements of

the charge were proven by substantial and credible evidence and that a reasonable jury could find Owens guilty of the crime charged in the indictment.

D. *Did the trial court err in failing to direct a verdict for the Appellant or to grant a judgment notwithstanding the verdict, in response to motions presented by the Defendant?*

As stated by our supreme court in *Wetz v. State*, 503 So. 2d 803, 807-08 (Miss. 1987), our standard of review on motions for JNOV is simply to determine whether the record is sufficient to sustain a finding of guilty on the offense charged. In other words, with respect to each element of the offense, could fair-minded jurors only find the defendant not guilty? *Harveston v. State*, 493 So. 2d 365, 370 (Miss. 1986); *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985). *See also Haymer v. State*, 613 So. 2d 837, 841 (Miss. 1993). For the reasons stated above, we cannot say that the trial court erred in denying the motion for judgement notwithstanding the verdict.

E. *Did the trial court err in failing to give a circumstantial evidence instruction?*

Owens contends that the portions of the evidence in the case *sub judice* are circumstantial and that the trial court should have given the jury a circumstantial evidence instruction. Such an instruction was never requested of the trial court by Owens and, therefore, he may not now complain that it was not granted. *Leverett v. State*, 197 So. 2d 889, 890 (Miss. 1967); *Mallett v. State*, 606 So. 2d 1092, 1095 (Miss. 1992). Moreover, for the reasons stated above, we hold that this is not a circumstantial evidence case.

F. *Was the jury verdict against the overwhelming weight of the evidence?*

This contention by Owens is without merit. "Where there is substantial evidence to support a verdict, this Court will not disturb a jury's finding." *Lewis v. State*, 580 So. 2d 1279, 1288 (Miss. 1991). *See also Innman v. State*, 515 So. 2d 1150 (Miss. 1987); *Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

G. *Did the failure of the Appellant's trial counsel to call Robert Dent as a witness amount to ineffective assistance of counsel, depriving Owens of his right to confront the witness?*

This claim by Owens must be considered by applying the standard of review set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Leatherwood v. State*, 473 So. 2d 964 (Miss. 1985) the Mississippi Supreme Court applied the standards of review set forth in *Strickland* and stated:

[T]he legal test as to effective assistance of counsel is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result . . . .' (Citations omitted). The burden of proving ineffective assistance of counsel is on the defendant to show that the counsel's performance was (1) deficient, and (2) the deficient performance prejudiced the defense. If the defendant fails to prove either component, then reversal of a conviction or sentence is not warranted. (Citations omitted)

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different . . . .

*Leatherwood*, 423 So. 2d at 968-69.

There is a strong presumption that counsel's conduct is reasonable and professional and that decisions made are strategic. *Murry v. Maggio*, 736 F.2d 279, 292 (5th Cir. 1984). Nevertheless, an attorney has certain "basic" duties when representing a criminal defendant, including the duties to "assist the defendant, to adovocate the defendant's cause, to consult the defendant on important decisions and to keep the defendant informed on important developments." *Dufour v. State*, 483 So. 2d 307, 310 (Miss. 1986).

We are unable to say that Appellant's counsel was ineffective under the standard of review set forth in *Strickland v. Washington.* Owens cites only one instance of alleged deficiency on the part of trial counsel: the failure to call Dent as a witness. As stated in Owens' brief, four things could have happened had Dent testified, and only one of those would have helped Owen's case: (1) he could have testified that a third party sold him the drugs; (2) Dent could have testified that Owens was in fact the one who sold him cocaine; (3) he could have given testimony that would not have had any bearing as to whom sold him drugs; or (4) he could have exercised his Fifth Amendment rights. The fact that Dent had previously informed the police that Owens was guilty, and that the information would have been further explored on cross-examination, combined with the fact that Owens' trial attorney knew that Dent would likely exercise his Fifth Amendment rights led counsel to make a strategic decision not to call Dent. We are therefore unable to conclude that the counsel for Owens was deficient or that Owens was prejudiced by the failure of his counsel to call Dent as a witness. Furthermore, the record reflects that Owens gave his consent to this decision in court. Thus, we hold that this assignment of error is without merit.

**THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF THE SALE OF COCAINE AS A HABITUAL OFFENDER AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS ARE TO BE ASSESSED TO THE APPELLANT.**

**BRIDGES, C.J., THOMAS, P.J., DIAZ, KING, PAYNE, JJ., CONCUR. SOUTHWICK, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MCMILLIN, P.J., AND COLEMAN, J. HINKEBEIN, J., NOT PARTICIPATING.**

**5/20/97**
**IN THE COURT OF APPEALS**

**OF THE**

**STATE OF MISSISSIPPI**

**NO. 94-KA-00537 COA**

**MCKINLEY OWENS**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

SOUTHWICK, J., dissenting

The majority finds admissible a hearsay statement of the man inside the drug dealer's automobile at the time of the drug purchase. As detestable as the crime involved clearly is, the evidentiary rule will not stretch to permit admission of this statement. Finding that this hearsay potentially was a factor in the jury's verdict of guilt, I would reverse.

Robert Dent was the intermediary through whom the undercover agent was working to purchase drugs from McKinley Owens. Dent, who did not know of the police surveillance, was the only person who entered the drug seller's automobile after the seller drove up to the designated meeting place. After what appeared to be the completion of the exchange of drugs for cash inside the automobile, the police began to close in. The seller saw what was occurring and started to drive away. He allegedly put a gun to Dent's head and told him to jump out while the car was moving. Dent did so and was scraped and bruised, but not badly hurt. An hour later, after the investigator said that Dent had "regained his composure," Dent was given his *Miranda* warnings. He was then asked if he would say what happened in the car. His response, redacted for decency's sake, was this: "You damn right I will. That son of a b---- stuck a gun to my head and threatened to blow my m----- f------ head off."

The defense was that McKinley Owens was not the person in the car. Dent refused to testify, but the State introduced this statement in which Dent identified Owens. The majority would affirm the trial court's admission of this statement as an excited utterance. M.R.E. 803(2). The rule declares that an excited utterance may have sufficient indicia of trustworthiness to be accepted as evidence. The trial court's obligation is to decide if the declarant (Dent in this case) is still subject to the excitement-creating event such that his statement was spontaneous and not the product of reflection. The witness here said that Dent was clearly angry, and also said that Dent was excited. The declarant's state of mind must be such that he is not capable "of conscious reflection." Jack B. Weinstein, 5 Weinstein's Federal Evidence 803.04[4] (Joseph M. McLaughlin ed., 2d ed. 1997).

My view is that Dent admitted that he had reflected on what had happened. He was no longer primarily scared, but he was vengeful. He did not say in stunned surprise "Oh my God, he almost killed me." Instead Dent had moved beyond shock and was angrily eager to tell his story. A witness's being angry at someone and wanting to "make them pay" is a proper subject of cross-examination to undermine credibility. Here, the majority uses a hearsay exception that requires inherent reliability to admit the statement of an angry, vengeful person who is not subject to cross-examination. Dent wanted to "get" the defendant for almost blowing his graphically described head off. To me, that is

reflective, not spontaneous.

As one evidence authority phrased it, the exception requires that the declarant be "under the immediate and uncontrolled domination of the senses. . . ." John H. Wigmore, 6 Wigmore on Evidence 1747 (Chadbourn rev. 1976). The classic example of an excited utterance begins "Oh my God," and is then followed by a remark on the event. Michael H. Graham, Handbook of Federal Evidence 803.2, at 840 n.11 (3d ed. 1991). I do not dissent because of Dent's choice of phrase. I dissent because his statement does not show a spontaneous, uncontrolled response to a strong stimulus, but shows a reflective desire for retribution. The reason for finding an excited utterance to be inherently reliable does not apply here.

A misidentification of the driver of the car was Owens's only defense. He presented a witness, Wayne Van Cleave, who "confessed" that he (Van Cleave) was the person in the car. Whether the jury would have found any of that testimony credible is not the appellate issue. Since I do not believe the evidence was subject to a hearsay exception, its admission constitutes a violation of the constitutional right to confront witnesses in a criminal trial. When a constitutional right is involved, "reversal is required unless 'on the whole record, the error was harmless beyond a reasonable doubt.'" *Newsom v. State,* 629 So. 2d 611, 614 (Miss. 1993).

Since Dent was the only person in the car in addition to the drug seller, his testimony was especially compelling. What the jury would have concluded is at least of some doubt if all they had were identifications by people who were watching from hiding places, or at least from outside the car. Considering that the entire defense was a question of identity, I cannot find this error to be harmless beyond a reasonable doubt.

**MCMILLIN, P.J., AND COLEMAN, J., JOIN THIS SEPARATE OPINION.**