984 So.2d 1035 (2008)
Gregory GRAVES, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KM-01432-COA.
Court of Appeals of Mississippi.
February 5, 2008.
Rehearing Denied June 17, 2008.
*1037 Gary L. Honea, Magnolia, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Jackson, attorney for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. An Amite County Circuit Court jury found Gregory Graves guilty of simple assault. Graves appeals, arguing that extraneous information allegedly received by the jury during deliberations affected the verdict and that the verdict is against the weight and sufficiency of the evidence. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. In November 2005, Graves and his wife of twenty years, Suzette (Susan) Graves, both life-long residents of Amite County, divorced. It is undisputed that Susan had been having an extramarital affair with Louie Wilkinson, the victim in this case, since approximately June 2005. Wilkinson was single and unemployed at the time of the affair. In January 2006, a few months after divorcing, Graves and Susan reconciled. Graves was under the impression that the affair between Susan and Wilkinson was over, but Wilkinson had continued to correspond with Susan after her and Graves's reconciliation by sending her a birthday card and giving her notes.
¶ 3. The incident at issue occurred on February 13, 2006. Susan had stopped by Wilkinson's house, unannounced, to give him a small Valentine's gift and to use the bathroom. Graves was driving by Wilkinson's home at about 2:30 p.m. when he noticed Susan's car in Wilkinson's driveway. Graves decided to pull into the driveway. The main entrance to Wilkinson's house is adjacent to the driveway, where there is a screened porch which leads into the kitchen. Graves entered Wilkinson's house, uninvited. Graves testified he wanted to talk to Wilkinson about why Wilkinson was corresponding with his ex-wife when they were attempting to reconcile. Testimony conflicts about what happened next, but an altercation between the two men ensued. The extent of the altercation was also in dispute; however, at the end of the confrontation, Wilkinson had a double compound fracture to his lower leg. Later that day, Graves was arrested. On February 23, 2006, Graves and Susan remarried.
¶ 4. In April 2006, a grand jury returned a two-count indictment against Graves for burglary of a dwelling and aggravated assault, pursuant to Mississippi Code Annotated sections 97-17-23 and 97-7-3 (Rev. 2006), respectively. At his arraignment, Graves pleaded not guilty. A two-day trial commenced in August 2006. The State offered two witnesses in its case-in-chief: Wilkinson and Officer Tommy Lee with the Amite County Sheriff's Department. Graves called four witnesses, including his wife, Susan, and himself. Two very different versions of the incident on February 13th unfolded: one version from Wilkinson and one version from Susan and Graves.
¶ 5. At trial, Wilkinson testified that Susan had come by his house, unannounced. Wilkinson saw Graves pull into his driveway and informed Susan, who was in the bathroom. Wilkinson stated both the screened porch door and kitchen door were unlocked, but closed. Susan emerged from the bathroom, and Wilkinson *1038 came into the kitchen where Graves "was standing there huffing and blowed up [sic] and very perturbed." Wilkinson claims he tried to calm Graves, but Graves, who was upset about the card and notes, "cold-cocked" him in the face. Wilkinson testified that Graves tried to choke him and stated he was going to kill him. Then, Wilkinson fell to the ground, feeling his leg "gone." However, Wilkinson admitted he told Susan during the scuffle to go "get the gun," which was kept in his bedroom. After Graves left, Wilkinson dragged himself to the bedroom to call 911 from his mobile telephone.
¶ 6. Graves and Susan, whose testimony matched, recounted a different version of the incident. Graves stated that both the porch and kitchen doors were "wide open," and he could see Wilkinson standing in the kitchen; so Graves entered the house. Graves contends that he and Wilkinson spoke, and Graves requested that Wilkinson quit corresponding with his ex-wife, as they were trying to reconcile. Wilkinson apologized to Graves for the correspondence. Susan emerged from the restroom at some point. Both Graves and Susan claim that Graves was not angry. Graves denied that he punched Wilkinson in the face, but instead he said Wilkinson warned him he had a gun in the bedroom. Graves reassured Wilkinson that he did not come there to fight, but Wilkinson started heading for the bedroom anyway. At this point, Graves and Susan admit Graves grabbed Wilkinson by the shirt to prevent him from going to the bedroom to get his gun. Graves claims Wilkinson then pushed him, and he fell over a table and some chairs, with Wilkinson falling on top of him. During this time, Graves insists Wilkinson was urging Susan to go get the gun and shoot Graves; so Susan told Graves to leave. Graves promptly left. He did not know Wilkinson's leg was severely broken until later, but he speculates it happened when Wilkinson fell over the chairs. Both Susan and Graves maintain the altercation amounted to a mere "tussle" that lasted no longer than twenty seconds.[1]
¶ 7. After both sides rested, the defense renewed its motion for a directed verdict, which had initially been raised and denied after the State's case-in-chief. The trial judge denied the motion. The jury was presented with instructions regarding the crimes of burglary of a dwelling house and aggravated assault, as well as the lesser-included offenses of willful trespass and simple assault. While in deliberations, the bailiff received a note from the jury, which read, "Define trespass?" After conferring with counsel on both sides, the judge instructed the jury to rely on the instructions already given. After deliberating nearly three hours, the jurors returned a verdict of guilty as to willful trespass and simple assault. The court polled the jury on its own motion and initiative, finding the verdict to be unanimous. However, the defense counsel told the judge, outside of the jury's presence, that the bailiff had advised him she overheard a telephone call in the jury room regarding the definition of trespass. When questioned by the judge, the bailiff corrected defense counsel that she did not hear a telephone call but heard a juror reading the definition of trespass from a book. The judge questioned the jury's foreperson about the matter; however, the judge did not receive a response about whether the jury relied on a different definition of trespass than that given in the instructions. The foreperson *1039 stated the jury arrived at the verdict of simple assault first. No further inquiry or objection was made by either counsel. Satisfied with this information, the judge excused the jurors. Defense counsel then moved to strike the trespass verdict. Out of an abundance of caution, the judge set aside the willful trespass verdict and accepted the guilty verdict for simple assault. The judge sentenced Graves to six months in the Amite County jail, with one month to serve and the remaining five months suspended, with Graves being placed on misdemeanor non-reporting probation for five years. The court also ordered Graves to have no contact with Wilkinson and to pay partial restitution of $330.18, in addition to all court costs and fees. Graves now appeals.

ANALYSIS
1. Whether any possible extraneous information received by the jury during deliberations impacted the verdict.
¶ 8. Graves argues that he did not have an opportunity to inquire fully into the scope of the alleged extraneous influence on the jury; thus, the verdict was compromised. Additionally, he contends it was error for the court not to poll the jurors individually as to their verdict. However, Graves did not move for a mistrial on these grounds.
¶ 9. Regarding possible outside influence of the jury, the trial judge is in the best position to determine if the jury has acted fairly and impartially. Caston v. State, 823 So.2d 473, 498 (¶ 84) (Miss.2002) (citing Fleming v. State, 687 So.2d 146, 148 (Miss.1997)). "[T]he trial judge himself ought to examine the jury carefully to ensure that the jury's deliberations are based on the evidence produced at trial and not extraneous matters." Id. at 497 (¶ 77) (quoting Williamson v. State, 512 So.2d 868, 882 (Miss.1987) (overruled on other grounds)). In Mississippi, it is well settled that a "mistrial is reserved for those instances where the trial court cannot take any action which would correct improper occurrences inside or outside the courtroom." Madere v. State, 794 So.2d 200, 214 (¶ 47) (Miss.2001) (citing Walker v. State, 671 So.2d 581, 621 (Miss.1995)). The grant of a mistrial is left to the sound discretion of the trial judge. Washington v. State, 800 So.2d 1140, 1143 (¶ 9) (Miss. 2001) (citing Pulphus v. State, 782 So.2d 1220, 1223 (¶ 10) (Miss.2001)). Failure to grant a mistrial results in error only when there is an abuse of this discretion. See Madere, 794 So.2d at 214 (¶ 47). The party contending juror misconduct bears the burden of overcoming the presumption of jury impartiality. Caston, 823 So.2d at 497 (¶ 77) (citing Gladney v. Clarksdale Beverage Co., 625 So.2d 407, 418-19 (Miss. 1993)).
¶ 10. In our case, contrary to Graves's assertion, the jury was individually polled, and the court "received an affirmative response from each of the twelve jurors" that the verdict was "guilty" as to willful trespass and simple assault. During deliberations, while a juror had passed a note to the bailiff asking the definition of trespass, the parties agreed that the judge should instruct the jury to rely on the instructions already given. After deliberations, the bailiff explained the alleged extraneous information was not a telephone call, as defense counsel had stated, but a juror's reading the definition of trespass from a book, which was presumably in the jury room. The judge questioned the jury foreperson and received no affirmative response that there in fact had been any extraneous influence on the jurors. At this point, Graves's counsel had an opportunity to move for a mistrial or inquire further, but he did not. After the trial *1040 judge granted Graves's motion to strike the verdict of trespass, Graves's counsel was satisfied. He did not request that the simple assault verdict be set aside. We find the trial judge adequately explored whether the jury received extraneous information and took appropriate precautionary measures by dismissing the conviction of willful trespass. The trial court did not abuse its discretion in this matter. This issue is without merit.
2. Whether the trial court erred in denying a motion for a directed verdict.
¶ 11. The trial court denied Graves's motion for a directed verdict both at the close of the State's case-in-chief and at the conclusion of the trial. However, we note Graves never filed a post-trial motion for a judgment notwithstanding the verdict (JNOV). Although charged with aggravated assault, the jury convicted Graves of the lesser-included offense of simple assault.
¶ 12. A motion for a directed verdict and motion for JNOV challenge the legal sufficiency of the evidence presented to the jury. McClain v. State, 625 So.2d 774, 778 (Miss.1993). In analyzing the evidence presented at trial, all credible evidence supporting the defendant's guilt will be accepted as true. Id. The critical inquiry is whether the evidence proves all elements of the offense existed and the accused committed the act charged beyond a reasonable doubt. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citing Carr v. State, 208 So.2d 886, 889 (Miss. 1968)). This Court's standard of review for both a directed verdict and JNOV is the same; we must consider the evidence in the light most favorable to the State, giving the State "the benefit of all favorable inference that may be reasonably drawn from the evidence." Baker v. State, 802 So.2d 77, 81 (¶ 13) (Miss.1995) (quoting Coleman v. State, 697 So.2d 777, 787 (Miss. 1997)). Our Court must affirm the trial court's denial of a motion for directed verdict, or JNOV, where substantial evidence exists to support the verdict and where "reasonable and fair minded jurors" may have found the appellant guilty. Id. Reversal is warranted if the facts point "so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict." Id.
¶ 13. Graves argues that the evidence presented at trial was legally insufficient to prove beyond a reasonable doubt that a simple assault occurred. The Mississippi Code Annotated states:
A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempt by physical menace to put another in fear of imminent serious bodily harm.
Miss.Code Ann. § 97-3-7(1) (Rev.2006). Graves claims the evidence points more towards an accident regarding Wilkinson's broken leg. Graves asserts that Wilkinson's testimony was insufficient proof because it was self-serving and contradicted by other witnesses' testimony.
¶ 14. In analyzing the record, we find there to be sufficient evidence presented to prove the elements of simple assault beyond a reasonable doubt. Although testimony conflicts about the details of the altercation, it is the province of the jury to decide which witnesses are credible. Jones v. State, 920 So.2d 465, 472-73 (¶ 22) (Miss.2006) (citing Jackson v. State, 614 So.2d 965, 972 (Miss.1993)). The jury is the ultimate fact-finder. Id. "Jurors are permitted, indeed have the duty, to resolve *1041 the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict." Id.
¶ 15. Graves admitted he grabbed Wilkinson's shirt, even though it was allegedly to prevent Wilkinson from going to get his gun. The end result of the scuffle was Wilkinson's broken leg. The evidence, analyzed in the light most favorable to the State, could certainly support the reckless element of simple assault, whether the act was intentional or not, and a resulting bodily injury. Furthermore, any claim of error regarding a motion for JNOV is procedurally barred as Graves did not file one. The trial court did not err in denying Graves's motion for a directed verdict. This issue is without merit.
3. Whether the verdict was against the overwhelming weight of the evidence.
¶ 16. Graves argues that the weight of the evidence presented at trial does not justify the jury's verdict of guilty of simple assault. He points out that Wilkinson was an interloper who injected himself into the Graves's marriage and continued to pursue Susan once she had reconciled with her husband. At trial, Graves maintains the State's portrayal of him as an angry husband seeking revenge did not materialize. Further, Graves argues that evidence proves he was physically unable to engage in an assault because of his back injury. Graves states that the inconsistent testimony of the parties points to his innocence; thus, the jury verdict of guilty should be reversed.
¶ 17. Our standard of review dictates that "[i]n determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Collier v. State, 711 So.2d 458, 461 (¶ 12) (Miss.1998) (quoting Herring v. State, 691 So.2d 948, 957 (Miss.1997)). This Court will not disturb a jury verdict unless it is "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Id.
¶ 18. According to the record, Graves did not orally request or file a motion for a new trial at any time after the jury arrived at its verdict. The State correctly argues Graves is thereby procedurally barred from challenging the jury's verdict based on the weight of the evidence. It is well settled that "there are certain errors that must be brought to the attention of the trial judge in a motion for a new trial" and "[a]mong those errors is that the verdict of the jury was against the overwhelming weight of the evidence." Hughey v. State, 729 So.2d 828, 830 (¶ 6) (Miss.Ct.App.1998) (citing Jackson v. State, 423 So.2d 129, 131 (Miss.1982)). Notwithstanding the procedural bar, we reject the merits of Graves's argument regarding this issue. As stated above, it is the province of the jury, not this Court, to resolve conflicts in testimony. The jury found sufficient evidence to convict Graves of simple assault. We find the trial court did not abuse its discretion regarding this issue.
¶ 19. THE JUDGMENT OF THE AMITE COUNTY CIRCUIT COURT OF CONVICTION OF SIMPLE ASSAULT AND SENTENCE OF SIX MONTHS IN THE AMITE COUNTY JAIL, WITH ONE MONTH TO SERVE, FIVE MONTHS SUSPENDED AND FIVE YEARS MISDEMEANOR NON-REPORTING *1042 PROBATION, AND PAYMENT OF $330.18 IN RESTITUTION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Additionally, evidence showed that at the time of the incident Graves was under workers' compensation coverage from his employer for several ruptured discs in his back; therefore, he was limited in strength and mobility.