995 So.2d 839 (2008)
Jerry Lee JENKINS, III, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00913-COA.
Court of Appeals of Mississippi.
November 18, 2008.
*840 Benjamin Allen Suber, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before LEE, P.J., BARNES, ROBERTS and CARLTON, JJ.
BARNES, J., for the Court.
¶ 1. Jerry Lee Jenkins III pleaded guilty to the charge of burglary of a dwelling on January 28, 2005, and was sentenced to sixteen years in the custody of the Mississippi Department of Corrections. Upon a hearing for post-conviction relief held on March 14, 2007, the trial court ordered a new trial, having found ineffectiveness of counsel during the former plea proceedings. Following a jury trial in the Circuit Court of Oktibbeha County, on May 2-3, 2007, Jenkins was convicted of burglary of a dwelling and sentenced again to sixteen years in the custody of the Mississippi Department of Corrections. It is from this conviction that he now appeals. Finding no error, we affirm.

FACTS
¶ 2. In or around 1999 or 2000, Jenkins started dating Yolanda Morgan, a fellow classmate from Hinds Community College. Although they soon moved away from one another, their relationship continued through the latter part of 2003.[1] Morgan and Jenkins would frequently travel to stay with each other in their respective towns.
¶ 3. In March 2003, the couple had a domestic dispute, which resulted in Jenkins being arrested.[2] Morgan did not *841 speak to Jenkins for approximately a month. They soon began talking to each other in an attempt to work out the problems in their relationship. Sometime between March and September 2003, they had mended their relationship and had resumed staying with one another on a frequent basis.
¶4. The following facts are Morgan's account of the events of September 21, 2003. Morgan was returning from a weekend trip with friends to Atlanta. On her way back to Starkville, Jenkins called her constantly, and they argued over the phone. Morgan told Jenkins that she would call him when she returned to Starkville to let him know she had arrived safely. After returning home, she testified that she called Jenkins in Bolton, Mississippi, where he was residing at the time, but he did not answer. As she was unpacking, Jenkins called her and said that he was in Jackson with his brother, and they were going to the movies. During the call, Morgan's co-worker, Donald Sharp, called on her second line and said he needed to drop off a notebook at her house. Sharp soon appeared at her house, and after he left, she resumed talking to Jenkins. Sharp quickly called back and informed her that he saw someone outside her house. Although she peered outside, it was very dark, and Morgan could not see anyone. She was still on the phone with Jenkins and asked him where he was. He said, "You know where I'm at." She then heard her neighbor's dog bark and could hear the echo of a dog barking through the phone. She shut and locked the door and again asked Jenkins where he was. He responded, "I'm outside your house," and asked her to open the door so he could talk to her.
¶ 5. Morgan told Jenkins that she did not want to talk and asked him to leave. She also stated that she wanted to end the relationship. She hung up the phone and had started walking to her bedroom when she heard a big crash behind her. She started running to her bedroom, but before she could close the bedroom door, Jenkins had pushed his fist through the door, preventing her from shutting it. Once in the bedroom, Jenkins punched Morgan in the face and hit her until she fell down. Morgan thought she blacked out and felt the pressure of his foot on her stomach. As she tried to pull out her cell phone, Jenkins grabbed it and ran out the door. Morgan found a cell phone on the futon in her living room, called her friend, Sharp, and asked him to call the police. When the police arrived, one of the testifying officers, Shawn Word, stated that Morgan had blood coming from her face.[3] Officer Word also noted that there appeared to be a shoe print on the front door near the knob, and the bedroom door had a hole in it and was smeared with what looked like blood.
¶ 6. Jenkins painted a different picture of the events of the evening. He admitted that he went to the Starkville apartment, but maintained that his purpose was to pick up some tools and end the relationship with Morgan. Jenkins said that Morgan told him over the phone that she did not want to break up. After they hung up, Jenkins entered the apartment and sat on the couch/futon. While they were talking, Morgan's phone rang, and she began talking to a male, presumably Sharp. The couple got into an argument; Morgan slapped him, and he slapped her in retaliation. Jenkins did not recall punching or kicking Morgan. Jenkins quickly left the *842 apartment, and Morgan came outside to ask him why he was leaving. Approximately two weeks later, he was arrested in Hinds County, Mississippi on charges of burglary of a dwelling.
¶ 7. Jenkins was found guilty of burglary, and he was sentenced to sixteen years in the custody of the Mississippi Department of Corrections. It is from this conviction that he now appeals. Finding no error, we affirm.

I. Whether the trial court erred in denying Jenkins's motion for a directed verdict.
¶ 8. At the close of the State's case at trial, Jenkins moved for a directed verdict, which the trial court denied. "In reviewing a trial court's denial of a motion for a directed verdict or a judgment notwithstanding the verdict, we must look at the sufficiency of the evidence." Anderson v. State, 973 So.2d 1044, 1046(¶9) (Miss.Ct. App.2008) (citing Bush v. State, 895 So.2d 836, 843 (¶¶15-16) (Miss.2005)). Viewing the evidence "in the light most favorable to the prosecution," we determine whether "any rational trier of fact could have found all the elements of the crime beyond a reasonable doubt." Bush, 895 So.2d at 843(¶16) (citation omitted). "[W]here the evidence fails to meet this test[,] it is insufficient to support a conviction." Id.
¶ 9. Jenkins was convicted of burglary under Mississippi Code Annotated section 97-17-23 (Supp.2008), which states:
(1) Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.
Jenkins maintains that the two elements of the crime were not met in this case: (1) an unlawful breaking and entering the dwelling of another, and (2) the intent to commit a crime once entry was gained. Jenkins's first argument is that there could be no "breaking and entering" since (1) the apartment in Starkville was also his dwelling, and (2) he was in the apartment with the consent of Morgan. Jenkins asserts that Morgan's apartment should be considered his dwelling since he frequently stayed with Morgan at the apartment and kept personal items there such as clothing and toiletries. Jenkins's mother, Barbara White, corroborated his testimony, stating that Morgan brought some of Jenkins's personal items to White after the altercation occurred. Jenkins also produced a key at trial that he purported to be a key to Morgan's apartment; however, the fact that it was the actual key to her apartment was disputed by other evidence presented.[4] Morgan contradicted Jenkins's testimony, stating that the only items of Jenkins at her apartment were some compact discs that she had borrowed.
¶ 10. "The intention of the dweller is the material consideration in determining whether a building may be characterized as a dwelling for purposes of the burglary statute." Washington v. State, 753 So.2d 475, 477(¶9) (Miss.Ct.App.1999). All the records pertaining to the apartment (lease and utilities) were listed under Morgan's name, not Jenkins's. There is no record that Jenkins had any claim to the apartment, other than keeping some small personal items there, which was disputed *843 at trial. Nor was there any evidence presented of Jenkins's providing any financial support to Morgan, other than a $200 money gram supposedly sent to Morgan after the burglary, which she claims she never received. While it may have been acknowledged that Jenkins was Morgan's long-time and frequent guest, the jury could have reasonably found that this did not elevate him to the level of an actual resident of the dwelling.
¶ 11. Secondly, Jenkins asserts that, contrary to Morgan's testimony, he entered the apartment peaceably and sat down to talk to Morgan. Jenkins maintained that the door was always sticking and that he did not kick down the front door.[5] Consequently, he claimed that he had Morgan's consent to be in the apartment. Jenkins notes that the discovery of his cell phone on the couch/futon supports his assertion. "[O]rdinarily a person who enters a building with the consent of the owner has not made an unlawful entry"; therefore, there can be no criminal breaking and entering. Davis v. State, 611 So.2d 906, 911 (Miss.1992). "When one enters with the consent of the owner, but commits a crime thereafter, his entry does not make him guilty of burglary." Mitchell v. State, 720 So.2d 492, 494(¶9) (Miss. Ct.App.1998). Jenkins also said that he had no intent when he entered the apartment to commit any crime therein. "The intent to commit a crime therein must co-exist with the physical act of entry." Davis, 611 So.2d at 911.
¶ 12. While Jenkins's citation of the law is correct, we find that there was sufficient contradictory evidence presented to show that the front door was opened by force and an assault on Morgan occurred immediately afterward. Morgan testified that she heard a loud crash, and suddenly, Jenkins was in her apartment. In addition, Officer Word testified there was a footprint on the front door, the door frame was cracked, and Morgan was injured and bleeding. Further, even if it were found that Jenkins had entered the apartment with Morgan's consent, the "breaking and entering" element also applied to an inner door, which in this case was Morgan's bedroom door. Morgan stated that Jenkins punched her bedroom door, preventing its closure. Officer Word corroborated her testimony, noting that there was a hole in the bedroom door, coupled with some smeared blood on the door.
¶ 13. It is up to a jury to determine the credibility of witnesses and resolve conflicts in the evidence. Miller v. State, 982 So.2d 995, 996(¶4) (Miss.Ct.App. 2008) (citing Evans v. State, 725 So.2d 613, 680-81 (¶ 293) (Miss.1997)). Jurors may accept or reject the testimony of any witness, and there is no formula that "dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict." Graves v. State, 984 So.2d 1035, 1041(¶14) (Miss.Ct. App.2008). Therefore, viewing the evidence in the light most favorable to the verdict, we find that the evidence was sufficient to support the verdict and affirm on this issue.

II. Whether the trial court erred in denying Jenkins's motion for a new trial because the verdict was against the overwhelming weight of the evidence.
¶14. Jenkins also argues that his motion for a new trial should have been granted by the trial judge as the verdict was clearly against the overwhelming weight of the evidence. He bases this argument on several contradictions in testimony *844 given at trial, most of which we have already addressed in the previous issue.
¶ 15. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush, 895 So.2d at 844(¶18) (citing Herring v. State, 691 So.2d 948, 957 (Miss. 1997)). Therefore, this Court accepts any evidence which supports the verdict as true, and we will reverse "only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Graves, 984 So.2d at 1041 (¶17).
¶16. Based on our review of the record, we find that the jury verdict is not against the overwhelming weight of the evidence and does not result in an unconscionable injustice. Therefore, we affirm the trial court's denial of the motion for a new trial.
¶17. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF SIXTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIBBEHA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Jenkins moved to Hattiesburg, Mississippi, where he was, for a time, a physical therapy student at Pearl River Community College. Morgan lived in Starkville, Mississippi, where she worked and attended Mississippi State University.
[2] Jenkins surrendered peacefully to authorities and pleaded no contest to the misdemeanor charge of domestic violence. It is undisputed that both parties in the March 2003 altercation struck one another.
[3] After the incident, Morgan went to the hospital where she received twenty-one stitches in her face.
[4] The key in Jenkins's possession was compared to Morgan's, and there was no match. In addition, Morgan adamantly denied that Jenkins ever retained a key to her apartment.
[5] Jenkins also denies punching the bedroom door.